HOLLAND TRUST CO. OF NEW YORK *v.* HOGAN *et al.*

*(Supreme Court, General Term, First Department.* February 18, 1892.)

1. MORTGAGES—FORECLOSURE—SETTING ASIDE SALE.
    H., interested in an equity of redemption, moved to set aside a foreclosure sale on the ground that it did not appear in the judgment roll whether the grantor of the mortgagor was single or married. It appeared that H. had in other actions made affidavit that such grantor was unmarried; also that the grantor described himself as unmarried in such conveyance, which fact was not denied by H. *Held,* that the motion was frivolous, and properly denied.

2. SAME—PARTIAL PAYMENTS—EXPENSES OF POSTPONEMENT.
    Moneys paid by the agent of a mortgagor for the purpose of obtaining a postponement of foreclosure sale, and expended by the mortgagee for readvertisements, cannot be applied to the reduction of the debt secured.

3. ATTORNEYS—RIGHT TO PURCHASE AT FORECLOSURE SALE.
    The attorney for plaintiff in a foreclosure suit, acting fairly and honestly, may buy in the premises for his own benefit and hold the same, except as against his own client.

Appeal from special term, New York county.

Action by the Holland Trust Company of New York, trustee, etc., against Isabella V. Hogan and others, to foreclose a mortgage. From an order denying a motion to set aside a foreclosure sale, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ.

*William Henry Knox,* for appellants.    *Morris P. Ferris,* for respondent.

PATTERSON, J. The order from which this appeal is taken was properly made by the justice at special term. The motion before him was directed to the accomplishment of three things, viz.: The setting aside of a sale of mortgaged premises; the application of two certain sums paid to the attorney of the plaintiff intermediate the first advertisement of sale and the actual

sale, to the reduction of the amount due on the decree; and the opening of the decree, and compelling the plaintiff to bring in as a party defendant a man who at one time held the legal title to the mortgaged premises.

Considering the several grounds in the reverse order of their present statement, it appears that the owner of the equity of redemption in the property was one Kate J. Murphy. She does not personally make any affidavit on this motion. It is based altogether on two affidavits of the defendant John Hogan, her brother-in-law, and, as he says, her agent; but it is apparent he is really the party interested. Hogan swears that the judgment is defective, because one O'Connor, who conveyed to the defendant Murphy, was not a party to the action. O'Connor was the grantee of this same affiant, and the person through whom the title passed into the name of Hogan's sister-in-law; and the reason why it is claimed O'Connor should be made a party is that it does not appear in the judgment roll whether O'Connor was married or has a wife living, there being no other party named as a grantor in the deed to Kate Murphy than O'Connor himself. This objection is utterly frivolous, and its presentation as a ground for setting aside a decree should be rebuked. It is disingenuous in the extreme. It appears in the answering affidavits, and is not denied, that in the conveyance of this and other property from O'Connor to the defendant Murphy he described himself as unmarried. Hogan conveyed to him, as he states in his own affidavit. He does not swear that O'Connor was married, nor is there anything to show he was. On the contrary, in various suits in the court of common pleas, to which this same Hogan was a party, O'Connor made an affidavit that he was unmarried, and it is simply incredible that Hogan did not know it. This attempt to deceive the court is quite enough to deprive the affiant's statements of any force at all.

On that branch of the motion which relates to the application of certain moneys to the reduction of the decree it appeared that the sale was first advertised for October 6, 1891. Hogan swears he first learned of the date they fixed on that morning, and then he arranged, on the payment of $100, to have it postponed for a fortnight; that again, at the expiration of that time, he arranged, on payment of $100 more, for another postponement of two weeks, which carried the day of sale to November 2d; that he (Hogan) miscalculated the time of sale, thinking it was the 3d, and that he intended to go again to the office of the plaintiff's attorney in quest of another and third adjournment; that he discovered on the 2d that the sale was advertised for that day, went to the salesrooms, but arrived too late, the property having been struck off to a purchaser. If these two amounts were paid for and exacted by the attorney for the plaintiff as conditions of an adjournment, and nothing else, we might well exercise the discretion residing in the court to direct a resale; but Mr. Ferris, the attorney, swears positively that the two payments were merely to cover the cost of readvertising, and, in corroboration of his statement, produces the bills of two newspapers for such advertisement. These bills of the Law Journal and the Sun aggregate $285, and it was not at all unreasonable that the payments made by Hogan should be required as conditions of the postponements of the sale.

The remaining ground upon which the interposition of the court was asked to set aside the sale is that the property was bid in by the plaintiff's attorney in his own name, and for his own benefit. It is claimed that for some reason the general principle that trustees, receivers, and those standing in fiduciary or confidential relations to others, and to property in which such others are interested, can acquire no advantage to themselves from or out of such property as purchasers, has application to this purchase. But Mr. Ferris stood in no fiduciary or confidential relation to Hogan or the defendant Murphy, and certainly not as to the property, for the very purpose of the suit was to sell that property away from the defendants. He owed them no direct duty, and was

not bound to do more than conduct the foreclosure suit honestly, lawfully, and without oppression or deceit, as an adversary proceeding. If his own client were to come in and claim the benefit of the purchase, a very different question would arise; but as to the parties making the present motion the simple question is as to the right of an attorney for an adverse party, whose conduct is perfectly fair and honest, to bid in the premises at a foreclosure sale. That is exactly what was done in *McCotter* v. *Jay*, 30 N. Y. 80, and in that case the purchase was sustained. We have examined the papers used in this motion with care to ascertain if there exists any ground on which to set aside this sale, and can find none. Both the auctioneer and referee swear that it was well and honestly conducted; that the attendance thereat was large; that the bidding was spirited, and there was much competition, no less than 13 different bids having been recorded by the auctioneer in his book. Nothing whatever was done by the attorney of the plaintiff at any time to mislead the defendants, but, on the contrary, all his proceedings were fair, open, and regular. The order must be affirmed, with $10 costs. All concur.